Good morning, Your Honors. May it please the court. My name is Nelson Ebal. I'm the attorney for Su Mun. Su Mun is asking this court to vacate the restitution order in this case. There's four reasons why that restitution order should be vacated. First of all, the plea agreement is not applicable to the issue in this case because the restitution order exceeded the statutory maximum. Second of all, the MVRA has a different methodology for calculating restitution depending upon whether it's a property crime or involves a bodily injury crime. Third, Mr. Mun in his plea agreement, he did not agree to broaden the scope of the conduct which could subject him to restitution. And then fourth, even if this court were to deem that Mr. Mun broadened the scope in the plea agreement, Mun's conduct did not give rise to L.R. and J.B.'s deaths. In sum, this case is about trying to put a square peg in a round hole. To my first point, the MVRA statute clearly states when you look at it with a plain reading that it should only when you have a property crime, you cannot get damages. I mean, you can't get restitution for funeral and cremation expenses. That's clear just by looking at the statute on its face. And then to be sure, the plea agreement, there is some language about how he would agree to be responsible in restitution for quote in the plea agreement. And accordingly, the parties can only speculate as to what that meant, what the phrase relevant conduct meant. It certainly did not mean that he agreed to be liable for conspiracy, liable for restitution for what others may have done and that he wasn't aware of what was going on. Was that a finding by the district judge that he wasn't aware of what was happening on this in this premises? Because my understanding of the facts was that he operated the place with full knowledge. It was actually a haven of sorts. That is true. I mean, he, to be sure he did operate the place knowing that there was a lot of drug activity going on. But again, the relevant conduct doesn't, you know, as it's what's not even defined in the plea agreement, but it certainly doesn't reach that sort of conspiracy liability. In some, I mean, it's just, again, this plea agreement just isn't broad enough to include this, you know, the cremation and funeral expenses. And then on top of it all, in the PSR, the findings that the district court did make, it appears that the district court was holding Moon responsible for restitution for, because he participated in disposing of these bodies. I mean, that's a horrible activity that Mr. Moon engaged in, but there's the causation is missing just because he participated in the In sum, Mr. Moon requests this court to vacate the restitution order and remand this case back to the district court so that the judgment can be amended and have the restitution omitted. Unless the court has any further questions, that's all that I have at this moment. Thank you, Mr. Ebell. Ms. Hayworth. May it please the court, Gail Hayworth on behalf of the United States. This court should affirm the district court's restitution order because the MVRA by its plain terms requires the payment of funeral expenses where the offense results in death. And Moon's other arguments against the district court's restitution order are barred by the appellate waiver. Turning first to the standard of review, which is disputed here, because Moon did not the restitution order in the district court on any grounds, let alone the one that he now urges for the first time on appeal, plain error review applies. As seen in Miller, Maturin, and Winchell, this court has repeatedly applied plain error review where the defendant raises challenges to the district court's restitution order for the first time on appeal. Now, Moon cites Nolan and Alfaro Hernandez for the proposition that the de novo review applies even to forfeited error whenever the defendant claims for the first time on appeal that the restitution order is illegal. But Alfaro Hernandez actually applied plain error standard of review. And in any event, neither case helps Moon because both cases ultimately cite back to and can be traced to this court's decision in Lankford, which applied the plain error standard of review, where the defendant argued for the first time on appeal that his sentence exceeded the statutory maximum. Therefore, to the extent Nolan or Alfaro Hernandez conflicts with Lankford, Lankford controls as the prior panel decision. Do you disagree that it exceeds the statutory maximum? Or are you saying that whether it does or it doesn't, it doesn't make any difference because it's not covered by the waiver language? He makes two arguments against the restitution order. The first one that the MVRA does not authorize funeral expenses in this case. I'm talking about the waiver now specifically. Right. And so the waiver covers one argument, but not the other. One argument that is arguing that the sentence exceeds the statutory max because it's arguing that the act does not allow, it does not authorize funeral expenses. So that he is allowed to make that. He did not waive that argument. It falls within the exception. However, the other argument that he is making that the district court's fact findings in finding that his conduct as opposed to the conduct of others caused the victim's losses here, that is waived by the appellate waiver. It does not fall within the statutory maximum exception. So turning to the only issue that was not waived by his appeal waiver, the interpretation of the Mandatory Victim Restitution Act, Munn's contention that that act does not authorize funeral expenses fails under the plain language of the statute. The statute provides in the case of an offense resulting in bodily injury that results in the death of a victim, the order of restitution shall require that the defendant pay an amount equal to the cost of necessary funeral and related expenses. Because this is a case of an offense that resulted in the death of the victim under the plain terms of the act, not only are funeral expenses authorized, they are required. Now Munn's argument otherwise confuses two distinct concepts. First, an offense against property, which is referenced by subsection C of the act, an offense resulting in damage to or the loss or destruction of property, which is referenced by subsection B. But the act's language, structure, and purpose make clear that those two concepts are distinct. An offense against property is referenced by subsection C in a list of enumerated offenses covered by the act. Also included in the list are a crime of violence, an offense relating to the tampering of consumer products, and offense relating to the theft of medical products. On the other hand, offense resulting in damage to or loss or destruction of property is referenced in subsection B, and it describes a category of loss that may result from any of the covered offenses, whether it's a crime of violence, an offense against property, or an offense resulting or relating to tampering with consumer products or the theft of medical products. Second, the act recognizes that a victim of an offense against property can suffer physical injury, as the statute specifically states that it applies whenever a victim of any of the covered offenses, including an offense against property, suffers a physical injury. Third, by the plain terms of subsection B of the act, it provides that the forms of restitution a district court must order depend not on the type of offense the defendant committed, but on the type of resulting loss, whether that's property loss, bodily injury, death, or expenses incurred while participating in the investigation or prosecution of the offense. Finally, the purpose of the act is to compensate victims for their loss and to make them whole, but this purpose can hardly be accomplished if, as Munn argues, the act completely ignores the victim actually suffered and instead focuses only on the type of offense the defendant committed. In order to compensate victims for loss, restitution must necessarily be considered and be based on the victim's loss. Now, in his reply, Munn cites a string of cases, but none of them stand for the proposition that the MVRA precludes funeral expenses where the offense results in death. Rather, all of the cited cases involve offenses resulting in property loss, not the loss of life. Moreover, several of the cases Munn cites actually supports the government's position. Brock Davis, Maynard, and Innarelli all indicate that funeral expenses are recoverable in any case where an offense results in death. In Brock Davis, the Ninth Circuit stated that the MVRA directs that physical injury is compensable. In Innarelli and Maynard, the First and Second Circuits noted that funeral expenses are recoverable under the MVRA if the also indicate that the type of qualifying offense the defendant committed is distinct from the loss that results and that restitution is pegged to the resulting loss, not the type of qualifying offense. In Wilfong and Maynard, the defendant committed a crime of violence that resulted in property loss, not physical injury. So, the victims accordingly in those cases were compensated for their property loss. In Maynard, the Second Circuit described subsection B of the act as outlining four not categories of offenses, as Munn argues. It then went through each of the victim's expenses to see if they qualified under any category of harm, showing that the qualifying offense is not limited to a particular category of harm and that if the offense had resulted in death, the victim would have been award funeral expenses as directed by subsection B3 of the MVRA. So, based on the plain language, structure, and purpose of the MVRA, as well as the case law, which, if anything, supports the government's position, not Munn's, Munn fails to show any error, let alone plain error, in the district court's holding that the MVRA requires him to pay funeral expenses where his offense resulted in death. Now, addressing the waiver issue, he argues that the district court erred in finding that he, as opposed to others, caused the victim's death, but as discussed, he waived that argument. In his plea agreement, Munn waived his right to appeal the order of restitution in an amount to be determined by the district court. Although he did reserve the right to appeal sentence exceeding the statutory maximum, and as discussed, although that reservation preserves his first argument against what the MVRA authorizes, it does not preserve his second argument, that the district court erred in finding that his conduct, as opposed to the conduct of others, caused the victim's losses. In Frazier, this court held that a similar argument was barred by an analogous waiver provision. There, the defendant argued that it was others, not him, who was responsible for the restitution amount, because the government had not shown that he had jointly undertaken the criminal activity. This court held that such an argument did not fall within the exception for a challenge to a sentence exceeding the statutory maximum, as it did not contend that the amounts awarded exceeded the victim's losses. There is no dispute that the victim suffered a total loss of $11,400. Munn's only argument is that the district court erred in finding that he, as opposed to other people, caused those losses. But more importantly, this is not an argument that the district court exceeded its authority in imposing restitution order. There is no dispute that the district court had the authority to impose restitution if it found, as it did here, that Munn's offense caused the victim's death. Munn's dispute is with how the district court exercised its discretion. His dispute is with the court's fact findings. And just as the statutory maximum exception does not cover a defendant's challenge to the district court's fact findings underlying a prison sentence, so, too, that exception does not cover a defendant's challenge to the court's fact findings underlying a restitution order. Because his contention that the district court erred in finding that he caused the victim's losses is barred by the appellate waiver, this court doesn't need to address it on the merits. But even assuming that the appellate waiver does not bar his claim, I'll go forward and address those if the court wants me to. Here, he fails to show that the district court plainly erred at all, let alone plainly erred, in finding that his conduct caused the victim's deaths here. The Act generally limits restitution to actual loss directly and proximately caused by the defendant's offense of conviction. But here, Munn agreed in his plea agreement that the district court could order restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone. Therefore, the district court had the authority to order restitution for losses directly and by Munn's offense of conviction, that is, his maintaining the drug and vault premises at the Han Gil Hotel, or by arising from relevant conduct. First, Munn fails to show that the district court erred, let alone plainly erred, in finding that the conduct underlying his offense of conviction was a but-for and proximate cause of the victim's death. But for Munn's maintaining the Han Gil Hotel as what it was, an unsafe haven where drug dealers could openly conduct their business without fear of law enforcement. J.B. would not have been there on June 26, 2018. He would not have consumed the heroin he obtained from the dealers there, and he would not have overdosed and died as onlookers refused to call 911 because police cannot come to the Han Gil Hotel. L.R. similarly would not have been there on December 27, 2018. She would not have suffered the death that she did either. And this is true whether she overdosed on heroin purchased and was killed by a violent drug dealer operating an environment where you can do whatever you want without fear of law enforcement, and there's a cleanup crew to remove the bodies. Now, the district court also plausibly found that Munn's offense conduct approximately caused J.B.'s and L.R.'s death as Munn maintained a hotel where 28 to 30 rooms were operating as traps 24 hours a day, seven days a week. In this setting where addicts were constantly using dangerous drugs like heroin, next to dealers who were strongly incentivized not to call 911, the risk of a fatal overdose was a foreseeable if not inevitable consequence. To the extent L.R. was violently killed, her death was no less foreseeable as the record is replete with incidents of violence occurring in the hotel before her death. In May 2018, a woman came out of the hotel bloody from a beating. Sometime before August 2018, he'll beat and strangled his girlfriend. In October 2018, a man was shot in the head and killed. In November 2018, two individuals were shot while working a trap room. Also in November 2018, a dealer fired several rounds down the hall of the hotel. On December 11, 2018, dealers tortured a woman with a blowtorch and struck her more than 50 times with a wooden chair leg until her bones were broken. On December 20, a dealer tortured a second individual with a blowtorch and fired a round close to his head. In this environment maintained by Munn, everyone was armed including Munn himself. Great efforts were taken to avoid police presence and bodies were removed from the hotel with a cleanup crew. Now Munn argues that the actions of others, the dealers who sold heroin to J.B. and L.R. and the drug dealer Hill who assaulted L.R., not him, were the ones that caused their deaths. But he ignores that there can be many but-for causes for a death and just because the dealer's actions also caused the victim's death does not mean that Munn's conduct did not. And this court has made clear in Salinas that a defendant is a but-for cause of an event when he creates the circumstances that produce the event. Just as the defendant in Salinas who arranged for the aliens is just as much a but-for cause of the aliens death as the co-defendant who drove the truck that crashed and just as the league's decision to schedule the baseball game is just as much a but-for cause of his visiting team's 1-0 victory as the leadoff batter's home run, so too was Munn who created the circumstances that produced J.B.'s and L.R.'s death just as much a but-for cause of their deaths as the dealers who sold them heroin or the dealer who assaulted L.R. Nor do the dealer's actions undermine proximate causation as they were entirely foreseeable. Beyond foreseeable, the dealer's distribution of heroin was an intended consequence of Munn's criminal conduct as his business was inextricably intertwined with theirs. And the evidence also supports the district court's finding that Munn was well aware of the violence that occurred in the hotel before L.R.'s death. And not only did he tolerate it, he enabled and he furthered it by to protect the drug dealers from law enforcement. He provided dealers with advance notice when he knew that city inspectors or law enforcement were coming. He deleted hotel surveillance footage that portrayed illegal conduct. He paid certain people to remove bodies from the hotel. In short, he made the Han Gill what it was, a place where you can do whatever you want and you don't have to worry about getting in trouble. Even the violence of Hill in particular was reasonably foreseeable to Munn as Hill was a drug dealer who had been at the Han Gill hotel the longest. Of all the dealers, he knew the hotel the best and it is fair to infer that Munn knew him the best. It's also fair to infer that Munn was aware of Hill's violent propensities as Hill had beaten and strangled his girlfriend during his time at the hotel. Hill had worked as an enforcer for the drug dealer Freeman and Munn himself even used Hill as a security for a period of time. Because Munn cannot show that the district court erred, let alone plainly erred in finding that his conduct in maintaining the hotel of horrors or the relevant conduct of his conspirators directly and proximately caused JV's and LR's deaths, this court should affirm. Unless the court has any further questions, we'll just ask the court to affirm. Thank you. Mr. Ebel, do you have a rebuttal? Yes, your honor. Again, the government is trying to put a square peg in a round hole. For instance, and by the way, Mr. Munn does not dispute that he committed awful crimes here. That's why he agreed to plead guilty to maintaining a drug premises. He's not even challenging his 20 year sentence. He knows that his activity was despicable. What he's challenging is that just because his behavior was despicable and horrible doesn't mean that the government can just ignore the plain language of the MVRA and the plain language of the plea agreement. There's just, and by the way, he's challenging whether he can even qualify to pay restitution in this order because he didn't even participate or jointly undertake any sexual assault. He didn't jointly undertake any attempts to murder people. And the evidence that's set forth in this PSR, I mean, it says that black apparently possibly sexually assaulted L.R., black possibly killed L.R., but there's no evidence at all that Mr. Munn jointly undertook any of that activity. By the way, as far as the appeal waiver goes, I mean, certainly if Mr. Munn was challenging how the funeral expenses were calculated, that would be barred under the appeal waiver. Also, if Mr. Munn was challenging how the cremation expenses were calculated, likewise, that would be barred under the appeal waiver. But that's not what Munn is doing in this case. He's simply bringing up a legal question, which he's allowed to do under the statutory maximum exception to the appeal waiver. Unless the panel has any further questions, that's all that I have on behalf of Mr. Munn. Thank you very much. Mr. Ebel, we know you're court appointed and we appreciate your service very much and the briefing that you've given. Thank you. Thank you. You're welcome, Your Honor.